UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                         )
THOMAS STALCUP,                          )
                                         )
            Plaintiff,                   )
                                         )
v.                                       )        Civil Action No. 13-11967-LTS
                                         )
DEPARTMENT OF DEFENSE,                   )
                                         )
            Defendant.                   )
_____)


MEMORANDUM AND ORDER ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT

September 18, 2015

SOROKIN, J.

       This action is before the Court on cross-motions for summary judgment.  Pro se plaintiff

Thomas Stalcup filed three requests for records pursuant to the Freedom of Information Act

("FOIA"), 5 U.S.C. § 552.  These record requests sought materials related to the crash, in 1996,

of TWA flight 800 and missile activity by the government around the time of the crash from the

Missile Defense Agency ("MDA"), the Office of the Secretary of Defense ("OSD"), and the

Joint Staff, all entities within the defendant Department of Defense ("DoD").  The DoD has

moved for summary judgment, arguing that its searches in response to the requests were

adequate and it has otherwise complied with the requirements of FOIA.  Stalcup has opposed the

DoD's motion and cross-moved for summary judgment on the grounds that the DoD's searches

were inadequate as a matter of law.

I.    <u>PROCEDURAL HISTORY</u>

This action was filed in August of 2013.  Several extensions of time to respond to the complaint were sought by the DoD in an attempt to resolve or narrow the issues presented by the complaint.  Sometime following the filing of the complaint, the DoD produced four documents that were identified as responsive during the search of the MDA pursuant to one of the records requests.  One of those documents was produced with significant redactions.  This production was unsuccessful at resolving the parties' differences, as the DoD filed a Motion for Summary Judgment on January 5, 2015, arguing that it had complied with all of its obligations under FOIA.  Stalcup responded with his Opposition and Cross-motion on February 27, 2015, which argued that the DoD's affidavits describing its search, and the search itself, were deficient in several ways.

In response to Stalcup's Opposition and Cross-motion, the DoD moved for a stay of this action, so that it could make a search of certain agencies, or subdivisions of agencies, that were identified in Stalcup's filing.  On May 29, 2015, the DoD produced additional documents that had been identified during a search of the Joint Staff.  This further production still did not resolve the disputes between the parties and the DoD, on June 12, 2015, requested that the Court reopen the summary judgment proceedings.  The DoD submitted a reply brief attaching two further declarations describing its searches that was intended to respond to the objections raised by Stalcup in his Opposition and Cross-motion.  Stalcup filed a surreply, maintaining that, notwithstanding the additional declarations, the affidavits and the searches were insufficient.

II.    STATEMENT OF FACTS

Stalcup has filed three FOIA requests to three entities within the DoD that are the

subjects of this litigation.  On March 28, 2010, Stalcup sent a records request to the OSD and the

Joint Staff seeking:

> l) the names and dates of all Naval, Joint, Defense Program, and/or contractor
> exercises, operations, and/or tests conducted on the East Coast of the United
> States in June, July, and August 1996; 2) any and all follow-up reports, observer
> reviews, and Joint Universal Lessons Learned Reports from all such exercises,
> operations, and/or tests that included intercept and/or target missiles or drones off
> the East Coast of the United States between May 1996 and October 1996; and 3)
> all memos, reports, emails, or other communications related to the downing of a
> commercial aircraft (simulated or otherwise) during any such event listed above.

Doc. No. 1-1 at 2.  On that same date, Stalcup sent a request to the MDA, requesting:

> 1) all Test and Evaluation Master Plan's for all systems involved in Missile
> Defense for FYl996; 2) All information regarding Live Fire Test and Evaluation
> exercises that included intercept and/or target missiles off the East Coast of the
> United States between May 1996 and October 1996; 3) any and all Joint
> Universal Lessons Learned Reports from all exercises that included intercept
> and/or target missiles off the East Coast of the United States between May 1996
> and October 1996; and 4) all memos, reports, emails, or other communications
> related to the downing of a commercial aircraft (simulated or otherwise) during
> any exercise conducted in 1996 or 1997.

Doc. No. 1-2 at 2.  Finally, on February 15, 2011, Stalcup requested of the OSD and the

Joint Staff:

> any and all submissions to the Office of the Secretary of Defense regarding the
> "analysis of, and conclusions regarding, the conduct and results" of any test or
> exercise conducted from June l, 1996 to October 30, 1996 on or off the East Coast
> of the United States involving the launching of one or more missiles. This request
> includes, but is not limited to all submissions to the Office of the Secretary of
> Defense as required by subsection (c)(2) of section 237 of the National Defense
> Authorization Act for Fiscal Year 1994.

Doc. No 1-3 at 2.   The DoD completed searches in response to these requests and made

the productions of documents described above.  The DoD has described those searches,

and the documents identified by those searches, in several declarations submitted by officials of entities within the DoD.

First Herrington Declaration

The first declaration submitted by the DoD is authored by Mark Herrington, the Associate General Counsel in the Office of General Counsel in the DoD.  He states that the MDA received the March 28, 2010 request.  Doc. No. 28-1 ¶ 5.  The declaration recounts that the MDA did not exist in 1996 or 1997, rather a predecessor organization, the Ballistic Missile Defense Organization, existed at that time, and that the MDA retains, in electronic format, the records of missile defense tests by its predecessor organization. The declaration states that records of missile defense tests are maintained by the Test Directorate within the MDA.  The declaration goes on to state that it searched the Test Directorate shared drives as well as several unclassified and classified networks.  It also set out the 14 search terms used to conduct the search at the MDA.

The first Herrington Declaration also described a search for records made by the OSD, which included review of the annual reports of the Director, Operational Test and & Evaluation and related operational test reports, but revealed no responsive materials.

Second Herrington Declaration

In response to Stalcup's Opposition and Cross-motion, the DoD filed a second Declaration of Mark Herrington.  This declaration described that, subsequent to Stalcup's Motion, a search was made of the Deputy Director for Joint Training within the J-7 section of the Joint Staff. The declaration explains the search terms used for that search. This Declaration also describes that a search was made of the Universal Content Management system for actions related to the federal investigation of the crash of TWA

800.  This latter search identified responsive materials that were produced to Stalcup by

the DoD.

> Bagnati Declaration

Finally, the DoD filed the declaration of David Bagnati, the Chief of Staff of the

MDA.  The Bagnati Declaration explained that the search for responsive documents

within the MDA searched the full-text of documents, which are scanned with text

recognition, the standard storage practice for older records maintained by the MDA.  This

declaration further explained that the search involved several classified and unclassified

networks which are repositories for all directorates within the MDA as well as specific

databases related to test activities within the Test Directorate of the MDA.  The Bagnati

Declaration set out fourteen search terms that were used to conduct the search within

these databases as well.  The declaration also describes the specific FOIA exemptions

that supply the basis for redactions of the document that was produced with material

redacted.  For each challenged redaction, the Bagnati Declaration explained the FOIA

exception relied upon and the general basis for the application of that exemption.

III.    LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  Once a party "has properly supported its motion for summary judgment, the

burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his

pleading, but must set forth specific facts showing there is a genuine issue for trial.'"  Barbour v.

Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 256 (1986)).  The Court is "obliged to []view the record in the light most

favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving

party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). Even so, the

Court is to ignore "conclusory allegations, improbable inferences, and unsupported speculation."

Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008) (quoting Medina–Muñoz v. R.J. Reynolds

Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). A court may enter summary judgment "against a

party who fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v.

Catrett, 477 U.S. 317, 322 (1986). When cross-motions for summary judgment are presented,

the Court "must consider each motion separately" and draw all inferences against each moving

party in turn. Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997).

IV.     DISCUSSION

        Stalcup raises several challenges to the sufficiency of the affidavits which describe the

searches for responsive records, and the adequacy of the searches themselves. The DoD argues

that its affidavits are sufficient to show that it completed an adequate search and that it otherwise

has complied with all of its obligations under FOIA.

        "In a summary judgment context, the burden rests with the agency subject to a FOIA

request to establish that it has 'made a good faith effort to conduct a search for the requested

records, using methods which can be reasonably expected to produce the information

requested.'" Oleskey ex rel. Boumediene v. U.S. Dep't of Def., 658 F. Supp. 2d 288, 294 (D.

Mass. 2009) (quoting Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990)). This

showing may be made by affidavits, "provided they are relatively detailed and nonconclusory,

and are submitted by responsible agency officials in good faith." Maynard v. C.I.A., 986 F.2d

547, 559 (1st Cir. 1993). An adequate affidavit will "describe in reasonable detail the scope and

method by which the search was conducted" and "describe at least generally the structure of the agency's file system which makes further search difficult." Id. at 559-60 (citations omitted). The affidavits, further, may "set[] forth the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials . . . were searched." Oleskey, 658 F. Supp. 2d at 294 (quoting Iturralde v. Comptroller of Currency, 315 F.3d 311, 313-314 (D.C. Cir. 2003)).  If the agency makes a sufficient showing, "a rebuttable presumption that the agency acted in good faith emerges." Stalcup v. C.I.A., 768 F.3d 65, 74 (1st Cir. 2014).  A requester can rebut that presumption and avoid summary judgment only "by showing that the agency's search was not made in good faith." Maynard, 986 F.2d at 560.  If the agency does not supply sufficient evidentiary support for its search, then the requester may avoid summary judgment "merely by showing that the agency might have discovered a responsive document had the agency conducted a reasonable search." Id.  It is important to note, however, that in assessing the adequacy of a search, "[t]he crucial issue is not whether relevant documents might exist, but whether the agency's search was 'reasonably calculated to discover the requested documents.'" Id. at 559 (quoting Safecard Servs., Inc. v. S.E.C., 926 F.2d 1197, 1201 (D.C. Cir. 1991)).

A.     The Records Request to the Missile Defense Agency

In Stalcup's Opposition and Cross-motion, he argued that the First Herrington Declaration was insufficient in that it did not sufficiently describe the structure of the MDA or its filing systems, and whether the process included a full-text search of the documents in the relevant databases.  The result, Stalcup argued, is that he was not in a position to determine if the search was adequate.  He argued in the alternative that, as described, the search of the MDA was inadequate.  Stalcup points to evidence he has put forward regarding missile tests allegedly occurring off of the East Coast of the United States during the relevant period and documents

currently in his possession that reference other documents that would be responsive to his request.  He argues that a search should have returned some material referencing these missile tests and the documents referenced in the reports he cites.  Because the DoD's search did not, he concludes, it must have been inadequate.[1]

The DoD filed two subsequent declarations intended to address the issues raised by Stalcup.  Those declarations explained that legacy records—those records from predecessor entities—are maintained in electronic format and a search of those records would include the full text of those documents, which are scanned using text recognition tools.  The declarations also explained that the search terms set out were used to search the MDA Unclassified and Classified Network portals, which contain information from all MDA Directorates as well as a records repository for legacy records, which contain documents from all MDA Directorates.  Also searched were databases which specifically contain information regarding test activities and are maintained by the Test Directorate within the MDA.

Considered together, the three declarations describe "the scope and method by which the search was conducted," "the structure of the agency's file system" and "the search terms and the type of search performed."  See Maynard, 986 F.2d at 559-60; Oleskey, 658 F. Supp. 2d at 294.  They provide sufficient detail to invoke the presumption that the agency acted in good faith.  See Stalcup, 768 F.3d at 74.

---

[1] Stalcup also challenged the redactions of one of the documents produced by the MDA.  The DoD claimed that those redactions were justified by certain exceptions to FOIA.  In his Opposition and Cross-motion, Stalcup identified specific redactions he was challenging, but stated that he would withdraw his challenge if the DoD submitted an affidavit that a) attested that the redactions he specified did not contain any material responsive to his request and b) provided explanations of the bases for the exemptions applied by the DoD.  The Bagnati Declaration explained the specific exemptions that justified each of the challenged redactions, stated the basis for the application of each objection, and stated that the challenged redactions did not contain information responsive to his request.  Stalcup did not raise further objection to the redactions in his surreply.  The Court thus considers this dispute to be resolved and does not further address it.

In an attempt to rebut the presumption, Stalcup points to evidence that missile or rocket firings occurred off the East Coast in 1996 and 1997 and, from there, he theorizes that documents must have been created by or provided to the MDA regarding those firings, and must have been retained by the MDA, such that they are still in the agency's possession.  Such speculation is not sufficient to rebut the presumption of good faith and defeat summary judgment.  As the First Circuit has noted, "the fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it."  Maynard, 986 F.2d at 564 (quoting Miller v. U.S. Dep't of State, 779 F.2d 1378, 1385 (8th Cir. 1985)).  "Adequacy 'is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search.'"  Moffat v. U.S. Dep't of Justice, 716 F.3d 244, 254 (1st Cir. 2013), cert. denied sub nom. Moffat v. Dep't of Justice, 134 S. Ct. 950 (2014) (quoting Iturralde, 315 F.3d at 315).  Here, the MDA adequately explained its search process and established that the methods used could be reasonably expected to produce the information requested.  Thus, the MDA has satisfied its obligations under FOIA.  As to the MDA, the DoD's Motion for Summary Judgment is ALLOWED and Stalcup's Motion for Summary Judgment is DENIED.

B.      The Records Requests to the Office of the Secretary of Defense and the Joint Staff

The record requests to the OSD and the Joint Staff, however, stand on different footing.  In his Opposition and Cross-motion, Stalcup argued that the First Herrington Declaration was inadequate as to these two entities, in that it insufficiently described the search methods and file system of the OSD and failed to describe any search of the Joint Staff.  The Second Herrington Affidavit attempted to remedy the deficiencies cited by Stalcup.  In his reply, however, Stalcup persisted that the two affidavits were insufficient to adequately describe the search.

In this regard, Stalcup is correct.  As to the OSD, the First Herrington Affidavit states that the Director, Operational Test and Evaluation would be responsible for any "reports" to the OSD responsive to Stalcup's second records request.  The affiant further states that he requested a search be conducted of that Directorate and that personnel within the Directorate reviewed the Directorate's annual reports and related operational reports "as appropriate."  The Second Herrington Declaration describes that a search was also made of the Office of the Deputy Assistant Secretary of Defense for Developmental Test and Evaluation.  It avers that that entity has only existed since 2009 and the employees of that office completed a search of their files but returned no responsive documents.

These affidavits are not sufficient to establish that "the agency's search was 'reasonably calculated to discover the requested documents.'"  Maynard, 986 F.2d at 559 (quoting Safecard Servs., Inc., 926 F.2d at 1201).  The affidavits nowhere describe in detail the scope and method by which the search was conducted or the structure of the OSD's file system which makes further search difficult.  See Maynard, 986 F.2d at 559-60.  The affidavits do not offer any explanation of why the two offices searched would be the only offices within the OSD reasonably likely to contain responsive documents, nor do they state whether there are any legacy filing systems that might retain responsive documents.  In addition, the affidavits fail to set forth the search terms and, in some cases, the type of search performed.  See Oleskey, 658 F. Supp. 2d at 294.  Without this information, the statement in the Second Herrington Declaration that it has searched "all offices reasonably likely to possess records responsive to" Stalcup's request, Doc. No. 49-1 ¶ 13, is conclusory, and the Court cannot rely upon it to determine the adequacy of the search.

As to the Joint Staff, there are no statements about any search of that office in the First Herrington Declaration.  In the Second Herrington Declaration, the affiant states that a search was conducted of the Deputy Directorate for Joint Training within the J-7 section of the Joint Staff.  The affidavit also sets forth search terms that were utilized in the search.  The affidavit also states that a search was made of the Universal Content Management System, which is described as "the legacy Joint Staff action tracking system."  Doc. No. 49-1 ¶ 9.  The declaration does not make clear what search terms were conducted of this system or if this system, along with the Deputy Directorate for Joint Training, would be the only databases reasonably likely to contain documents that were responsive to the request.  As with the OSD the content of the affidavits is insufficient to establish that the searches were "reasonably calculated to discover the requested documents."  See Maynard, 986 F.2d at 559.

In light of the Court's determination, both motions for summary judgment will remain under advisement.  The DoD shall have thirty days to submit further affidavits that detail the filing systems of the two agencies, search terms or other methods that were utilized to search, and some explanation of why the databases searched were the only places within the respective agencies likely to contain responsive materials to both requests.[2]

V.    CONCLUSION

As to the records request of the MDA, the DoD's Motion for Summary Judgment, Doc. No. 27, is ALLOWED and Stalcup's Motion for Summary Judgment, Doc. No. 32, is DENIED.

---

[2] The Court also notes that Stalcup objects that the DoD has made reference to the possibility of responsive documents within the Defense Information Systems Agency, but has not searched that agency. Having reviewed the three FOIA records requests that are the subject of this litigation, the Court does not have a sufficient record before it to determine if the Defense Information Systems Agency is a component of the agencies to which records requests were directed or is a separate entity not subject to Stalcup's requests.  See Maynard v. C.I.A., 986 F.2d 547, 560 (1st Cir. 1993) ("the scope of a search is limited by a plaintiff's FOIA request").  The DoD shall supplement the record with evidence on this issue.

The Motions otherwise remain under advisement.  The DoD shall supplement the record as described above within 30 days of this Order.  The plaintiff may respond 14 days thereafter.

SO ORDERED.

     /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge