UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | )
|---|---|
| THOMAS STALCUP, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 13-CV-11967-LTS |
| | ) |
| DEPARTMENT OF DEFENSE, | ) |
| Defendant. | ) |
| | ) |

MEMORANDUM AND ORDER ON MOTION FOR SUMMARY JUDGMENT
(DOC. NO. 95)

October 15, 2018

SOROKIN, J.

In 2010 and 2011, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, pro se plaintiff Thomas Stalcup filed three requests for records related to the July 17, 1996, crash of TWA Flight 800 and missile activity by the government around the time of the crash from the Missile Defense Agency ("MDA"), the Office of the Secretary of Defense ("OSD"), and the Joint Staff, all entities within the Department of Defense ("DOD"). After somewhat lengthy proceedings before this Court in which DOD produced, for the first time, documents after the filing of suit, produced further documents upon the Court's prompting, and supplemented its summary judgment submission in response to a Court order, this Court entered judgment in favor of DOD. Stalcup appealed. The First Circuit affirmed in part and vacated in part the Court's decision, remanding the matter for further proceedings. Before the Court are a motion for summary judgment from DOD, Doc. No. 95, and a motion for discovery from Stalcup, Doc. No. 101.

I.      FACTS AND PROCEDURAL HISTORY

Stalcup has filed three FOIA requests to the MDA, OSD, and the Joint Staff, each of which is a component within DOD. On March 28, 2010, Stalcup sent a records request to the OSD and the Joint Staff seeking:

> l) the names and dates of all Naval, Joint, Defense Program, and/or contractor exercises, operations, and/or tests conducted on the East Coast of the United States in June, July, and August 1996; 2) any and all follow-up reports, observer reviews, and Joint Universal Lessons Learned Reports from all such exercises, operations, and/or tests that included intercept and/or target missiles or drones off the East Coast of the United States between May 1996 and October 1996; and 3) all memos, reports, emails, or other communications related to the downing of a commercial aircraft (simulated or otherwise) during any such event listed above.

Doc. No. 1-1 at 2. On that same date, Stalcup sent a request to the MDA, requesting:

> 1) all Test and Evaluation Master Plan's for all systems involved in Missile Defense for FYl996; 2) All information regarding Live Fire Test and Evaluation exercises that included intercept and/or target missiles off the East Coast of the United States between May 1996 and October 1996; 3) any and all Joint Universal Lessons Learned Reports from all exercises that included intercept and/or target missiles off the East Coast of the United States between May 1996 and October 1996; and 4) all memos, reports, emails, or other communications related to the downing of a commercial aircraft (simulated or otherwise) during any exercise conducted in 1996 or 1997.

Doc. No. 1-2 at 2. Finally, on February 15, 2011, Stalcup requested of the OSD and the Joint Staff:

> any and all submissions to the Office of the Secretary of Defense regarding the "analysis of, and conclusions regarding, the conduct and results" of any test or exercise conducted from June l, 1996 to October 30, 1996 on or off the East Coast of the United States involving the launching of one or more missiles. This request includes, but is not limited to all submissions to the Office of the Secretary of Defense as required by subsection (c)(2) of section 237 of the National Defense Authorization Act for Fiscal Year 1994.

Doc. No 1-3 at 2. Because DOD had not provided documents that responded to Stalcup's requests, Stalcup brought this action in August 2013. Doc. No. 1 at 3. Over the next two years,

DOD performed records searches addressed to Stalcup's concerns and produced responsive documents. This production did not resolve Stalcup's concerns, and DOD moved for summary judgment on January 5, 2015, arguing that it had complied with all of its obligations under FOIA. Doc. No. 27. In support of its motion, DOD submitted two affidavits from Mark Herrington, an agency attorney, that described the agency's search for responsive documents, Docs. No. 28-1, 49-1, and an affidavit from David Bagnati, the Chief of Staff of the MDA, that described that component's searches, Doc. No. 49-2. After staying DOD's summary judgment motion to allow further production, the Court granted the motion as to the records request to the MDA on September 18, 2015, ordering DOD to further supplement the record on the other requests. Doc. No. 57. DOD then submitted two additional affidavits from Herrington with further description of the agency's records search.[1] Docs. No. 62, 69-1. After further briefing, the Court found that DOD had met its FOIA responsibilities with respect to all three of the agency components and granted DOD's summary judgment motion in its entirety. Doc. No. 72.

Stalcup then appealed this Court's order to the First Circuit, which, in a per curiam opinion issued on January 3, 2018, vacated the order in part and remanded the action to this Court for further proceedings. Doc. No. 79. The First Circuit found that DOD's records search was inadequate in different ways with respect to each of the three agency components to which Stalcup sent requests, the specifics of which are discussed below. Id. On remand, DOD submitted to the Court another affidavit from Herrington that provided additional information about the agency's records searches, Doc. No. 88, and renewed its motion for summary judgment, Doc. No. 95. Stalcup opposed, Doc. No. 98, and filed a motion for discovery, Doc.

---

[1] The contents of Herrington's first four affidavits and Bagnati's affidavit are described in this Court's earlier orders on motions for summary judgment. See Docs. No. 57 at 4-5, 72 at 2-5.

No. 101. DOD filed a reply to Stalcup's opposition to summary judgment and opposition to his motion for discovery, Doc. No. 104, to which Stalcup filed a surreply, Doc. No. 107.

II.     <u>LEGAL STANDARD</u>

In its judgment vacating in part this Court's prior summary judgment order, the First Circuit described the relevant legal standard for evaluating a motion for summary judgment in FOIA litigation:

> To win summary judgment on the adequacy of a search conducted in response to a FOIA request, "the agency must demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." <u>Nation Magazine v. U.S. Customs Serv.</u>, 71 F.3d 885, 890 (D.C. Cir. 1995); <u>see</u> <u>Moffat[] v. U.S. Dep't of Justice</u>, 716 F.3d 244, 254 (1st Cir. 2013). The burden is on the agency to justify its response to plaintiff's FOIA request. 5 U.S.C. § 552(a)(4)(B). An agency may satisfy its burden by submitting affidavits by responsible agency officials, provided they are not controverted by contrary evidence or evidence of bad faith, <u>Military Audit Project v. Casey</u>, 656 F.2d 724, 738 (D.C. Cir. 1981); <u>see</u> <u>Moffat[]</u>, 716 F.3d at 254, and are "reasonably detailed . . . , 'setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched,' . . . as well as a general description of the structure of the agency's file system demonstrating why further search would be overly burdensome." <u>Maynard v. CIA</u>, 986 F.2d 547, 563 (1st Cir. 1993) (quoting <u>Oglesby v. U.S. Dep't of Army</u>, 920 F.2d 57, 68 (D.C. Cir. 1990)). "An agency's affidavit is 'accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.'" <u>Maynard</u>, 986 F.2d at 560 (quoting <u>SafeCard Servs., Inc. v. SEC</u>, 926 F.2d 1197, 1200 (D.C. Cir. 1991)) (internal quotation marks omitted). "The crucial issue is not whether relevant documents might exist, but whether the agency's search was reasonably calculated to discover the requested documents." <u>Maynard</u>, 986 F.2d at 559 (internal quotation omitted); <u>see</u> <u>Iturralde v. Comptroller of Currency</u>, 315 F.3d 311, 315 (D.C. Cir. 2003).

Doc. No. 79 at 4. The First Circuit further discussed the application of this standard to DOD's searches of each of its agency components, <u>id.</u> at 4-10, as discussed below.

III.      DISCUSSION

    A.      MDA

With respect to the MDA, Stalcup claimed that DOD had improperly limited its record search to the Test Directorate, one component within the MDA, rather than including in its search other components that were likely to possess responsive documents, such as MDA's Office of the Program Executive for "C4I" (Command, Control, Communications, Computers & Intelligence). Doc. No. 78 at 4. Although the First Circuit rejected Stalcup's claim that extrinsic evidence of activities that likely would have generated responsive documents undermined DOD's claim that a thorough search of MDA returned no such documents, it also found that the agency affidavits had not claimed that all MDA filing systems were searched, "explain[ed] why C4I or other Directorates' individual record systems were not reasonably likely to contain responsive records," or "contain[ed] the 'necessary' statement that the entire universe of files likely to contain responsive material was searched." Id. at 5 (quoting Oglesby, 920 F.2d at 68).

On remand from the First Circuit, Herrington explained in his fifth affidavit that "in its search for responsive documents, MDA went beyond limiting its search to the Test Directorate," Doc. No. 88 ¶ 5, pointing to Bagnati's statement in his affidavit that "the Records Management personnel searched: the MDA Unclassified Network (UNET) portal containing information from all MDA Directorates, the MDA Classified Network (CNET) portal containing information from all MDA Directorates, the NARA and DoD compliant MDA records repository application referred to as ECART for legacy documents to which all MDA Directorates contribute," Doc. No. 49-2 at 4, to demonstrate that in fact DOD did search the records of every MDA directorate, including C4I. Herrington also "affirmatively state[d] that the entire universe of files within MDA likely to contain responsive material was searched." Doc. No. 88 ¶ 6.

5

But the information in Herrington's latest affidavit is still insufficient to allow a conclusion that records systems in other individual Directorates are either too burdensome to search or unlikely to contain responsive information. Nor does the latest affidavit state that no such records systems exist. Although there is "no requirement that an agency search every record system" or "provide a comprehensive list of record systems unlikely to contain responsive records," an agency must nevertheless "provide a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials were searched, as well as a general description of the structure of the agency's file system demonstrating why further search would be overly burdensome." Maynard, 986 F.2d at 563 (internal citations and modifications omitted).

Here, DOD has plainly set forth details of the search it performed and has stated that all files likely to contain responsive materials were searched. But DOD concedes that its affidavits "never state[] that every file system in all MDA Directorates was searched." Doc. No. 104 at 3 n.2. Given that some agency file systems apparently were not searched, the agency must provide a general description of the structure of the agency's recordkeeping system such that the Court can assess its claim that further searches would be overly burdensome. But it has failed to do so. Rather, Herrington's affidavit states only that DOD searched two networks portals and one records repository that "contain[] information" from every MDA Directorate, without providing an overall description of the file systems in those directorates or in MDA as a whole or stating that those systems contain *all* potentially responsive information from every component of the agency. Doc. No. 88 ¶ 5. The affidavit then claims on this basis that "all MDA directorates were searched." Id.

These conclusory statements about the extent of the agency's records search do not suffice as a "general description of the structure of the agency's file system," Maynard, 986 F.2d at 563, nor do they provide enough information about MDA's recordkeeping system such that the Court can understand whether or why searches of any file systems not yet searched would be overly burdensome.[2] They do not offer any explanation of which, if any, of those three agency-wide records systems would be likely to return all responsive documents from every MDA Directorate, nor do they explain the relationship between those systems and individual Directorates' records systems, if any exist. Without this information, statements that the agency has searched all MDA Directorates are conclusory, and the Court cannot rely upon such statements to determine that the search was adequate.

B.  OSD

Stalcup claims that OSD failed to search for documents responsive to his March 28, 2010, request, and searched only for documents responsive to his February 15, 2011, request. The First Circuit held that DOD's declarations with respect to OSD did "not specifically address any category of records sought in the initial request" and were therefore "insufficient to establish that OSD conducted a reasonably thorough search for documents responsive to both requests." Doc. No. 79 at 6. On this point, DOD has explained on remand in Herrington's fifth affidavit that "MDA . . . falls within OSD/[Joint Staff]." Doc. No. 88 ¶ 8. Because the February 15, 2011, request to OSD was virtually the same as the March 28, 2010, request to MDA, the two requests "were ultimately one [and] the same," id., and OSD initially believed that MDA "was the proper

---

[2] Although DOD appears to suggest in a footnote to its reply that the MDA record systems that were not searched were the "paper files of those other directorates," Doc. No. 104 at 3 n.2, that reference alone does not provide a description of the agency's filing structure sufficient to justify its search. Moreover, no similar allusion to paper files appears in Herrington's affidavit.

7

[DOD] component to search for all portions of the request," though it later considered whether other portions of the agency might have responsive documents, id. ¶ 9. Equipped with this "description of a search undertaken by OSD in response to the initial request," Doc. No. 79 at 6, the Court can evaluate the sufficiency of the search for material responsive to Stalcup's second request along with the sufficiency of the search for material responsive to Stalcup's first request.

Stalcup also claims that OSD failed to make a sufficient search for records about developmental missile testing, searching only the Office of the Director, Operational Testing & Evaluation ("DOT&E") and the Office of the Deputy Assistant Secretary of Defense for Developmental Test & Evaluation ("DT&E"), two components with OSD, rather than the entire office. The First Circuit held that, although DOD had stated that no other OSD components were likely to have responsive records, the agency also stated that even DOT&E and DT&E, the two components that *were* searched, were unlikely to have developmental missile testing records dating back to 1996 that would be responsive. Doc. No. 79 at 7. DOD believed that DOT&E was likely to have only operational missile testing records, while DT&E was searched only at Stalcup's request, not because DOD believed it would have responsive records. Id. As a result, "[i]n the absence of any assertion that developmental testing records dating back to 1996 no longer exist, or that a search for such records would be overly burdensome," DOD's assertions did not meet the agency's burden of showing that it executed a search "reasonably calculated to discover responsive developmental testing records." Id.

Herrington's fifth affidavit still contains no claim that neither OSD nor the Joint Staff has archives that would contain documents from 1996 responsive to Stalcup's request. Although Herrington states that "[t]here are no archives or repository for older records, like those maintained by MDA, in DOT&E or DT&E," he does not claim that the agencies have no

8

archives at all, whether similar or dissimilar to those maintained by MDA, that would be reasonably likely to contain responsive documents.[3] Because Herrington's statement does not constitute an assertion "that developmental testing records dating back to 1996 no longer exist," Doc. No. 79 at 7, it does not, on its own, suffice to demonstrate that the agency's search was reasonably calculated to locate responsive records.

The affidavit also states that searches beyond those already conducted "would have been an overly burdensome and fruitless exercise because it is highly unlikely that responsive documents exist elsewhere within OSD[ or the Joint Staff], and if they ever were in existence, due to their age would most likely be maintained at the National Archives." Doc. No. 88 ¶ 14. However, the affidavit provides no "description of the agency's file system demonstrating why further search would be overly burdensome." Maynard, 986 F.2d at 563. With no such description, the claim that responsive documents would be unlikely to exist elsewhere in agency records cannot, on its own, resolve the Court's inquiry into the burden of additional searches. Accordingly, the conclusory claim that further searches would be overly burdensome, without further specific explanation of the nature of the burden, does not carry the agency's duty to demonstrate the adequacy of its search.

C.  Joint Staff

Stalcup claims that DOD has not demonstrated that its search of the Joint Staff was reasonably calculated to locate responsive records, see Doc. No. 99 at 9, in part because its

---

[3] DOD's motion for summary judgment states that there are no such archives of older records "in DOT&E or DT&E *or within another OSD/[Joint Staff] office*." Doc. No. 96 at 15 (emphasis added). Herrington's fifth affidavit does not, either in the paragraph cited in the motion or elsewhere, contain the final catch-all stating that archives of older records do not exist in *any* OSD or Joint Staff office. The Court does not consider the motion's statement, standing unsupported by an agency affidavit, as evidence of the agency's search.

9

search was limited to the J-7 Directorate and Records Research & Content Branch files, omitting the other numbered Joint Staff directorates, Doc. No. 79 at 9. The First Circuit concluded that DOD's explanation for this decision was "conclusory" because it stated only that other numbered Directorates did not handle "live fire tests" or Joint Universal Lessons Learned reports, even though Stalcup's records requests clearly addressed broader categories of records than only those. Id. Further, although Herrington's third affidavit listed the names of the Joint Staff Directorates that were not searched, Doc. No. 62 ¶ 17, it did not describe those Directorates' "missions, functions, or record systems," and it was "not self-evident that the other Directorates were not likely to have responsive records." Doc. No. 79 at 9-10. As a result, the affidavits were insufficient to "'cogently' explain [DOD's] decision to search only one Directorate." Doc. No. 79 at 9 (quoting Stalcup v. CIA, 768 F.3d 65, 74 (1st Cir. 2014)).

On remand, Herrington's fifth affidavit offers more information about the agency's search of the Joint Staff. First, insofar as the request focused on missile programs, DOD determined that the MDA, which then fell within OSD and the Joint Staff and whose mission focuses on missile defense, "was the proper [DOD] component to search" for records responsive to Stalcup's requests. Doc. No. 96 ¶¶ 8, 9. But Stalcup then "raised a valid issue that the J-7 directorate within the Joint Staff may have controlled the Joint Universal Lessons Learned" reports, leading DOD to search that Directorate and find no responsive documents. Id. ¶ 9. DOD also "consider[ed] whether any other component within Joint Staff may have" had responsive documents, but determined, based on the missions and functions of each, that none likely would. Id. ¶ 10. Joint Staff also searched its Records Research & Content Branch files. Id. ¶ 11.

The description of the agency's search provided in Herrington's fifth affidavit still does not "'cogently' explain [DOD's] decision to search only one Directorate." Although the affidavit

10

states that the agency did eventually consider whether other Directorates might possess responsive records, describing briefly each of the other directorates' missions and functions, id. ¶ 10, it does not describe the other Directorates' records systems, nor does it describe how specifically the agency considered whether those systems might contain documents responsive to Stalcup's records request. Without such a description, "it is not self-evident that the other Directorates were not likely to have responsive records," Doc. No. 79 at 10, even with the fifth affidavit's summary description of those Directorates' missions and functions. Further, the fifth affidavit offers no additional information, such as "a general description of the structure of the agency's file system," Maynard, 986 F.2d at 563, that could explain whether or how "searching other areas would have been overly burdensome," Doc. No. 79 at 10.

Finally, the agency's explanation appears to confirm that its own initial assessment was that MDA, then a component of OSD and the Joint Staff, would be the only component within those agencies that possessed responsive documents, and that its later decision even to *consider* whether the numbered Directorates likely possessed responsive documents was prompted only by Stalcup's suggestion that the J-7 Directorate likely did so. Although the affidavit claims that Stalcup "never alleged that any of [the] other Joint Staff directorates were likely to have responsive information," Doc. No. 88 ¶ 10, Defendant offers no justification for requiring Stalcup, who requested all records in the possession of any component of the agency, to direct the agency's decisions about its search design. Rather, in FOIA cases, the burden is on the agency to demonstrate "beyond material doubt that its search was reasonably calculated to uncover all relevant documents." Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1995). Because the affidavits before the Court do not contain information sufficient to demonstrate that DOD undertook a good-faith effort to design a search of the Joint Staff that was

11

reasonably calculated to return all documents responsive to Stalcup's request, the agency has not met its "initial burden of showing that it conducted an adequate search." Moffat v. U.S. Dep't of Justice, 716 F.3d 244, 254 (1st Cir. 2013).

IV.     CONCLUSION

In light of the Court's determinations above, DOD's motion for summary judgment, Doc. No. 95, is DENIED WITHOUT PREJUDICE. Stalcup's motion for discovery, Doc. No. 101, is DENIED WITHOUT PREJUDICE. DOD shall have thirty days to submit further affidavit(s) that provide further detail about the design of its searches of the MDA, the OSD, and the Joint Staff sufficient to "demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents," Nation Magazine, 71 F.3d at 890, in the ways described in this Order. With these affidavit(s), DOD may file a renewed motion for summary judgment with a memorandum limited to ten pages. Stalcup may file an opposition, limited to ten pages, due fourteen days after DOD's filing. DOD may file a reply limited to four pages within seven days thereafter. If the Court denies the renewed motion for summary judgment, its order will direct the parties to submit their joint or separate proposals for discovery.

                                        SO ORDERED.

                                         /s/ Leo T. Sorokin
                                        Leo T. Sorokin
                                        United States District Judge